*Thermal Surgical, LLC v. Brown*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2024

(Argued: January 7, 2025    Decided: August 8, 2025)

Docket No. 24-127

THERMAL SURGICAL, LLC,

*Plaintiff-Counter-Defendant-Appellee,*

−v.−

JEFF BROWN,

*Defendant-Third-Party-Plaintiff-Appellant,*

JASON LESAGE, GREGORY SWEET, NUVASIVE, INC.,

*Defendants.*[*]

Before:    WALKER, ROBINSON, AND MERRIAM, *Circuit Judges.*

---

[*] The Clerk's office is respectfully directed to amend the caption as reflected above.

Defendant Jeff Brown appeals from a judgment of the United States District Court for the District of Vermont (Sessions, *J.*) in favor of Plaintiff Thermal Surgical, LLC ("Thermal Surgical"). When Brown filed for bankruptcy, Thermal Surgical had pending claims against him in district court for allegedly breaching his obligations under their non-compete agreement. In the bankruptcy court, Thermal Surgical filed a proof of claim. Brown never objected to Thermal Surgical's proof of claim and eventually waived his right to discharge. The bankruptcy court allowed Thermal Surgical's proof of claim, and Thermal Surgical received a distribution from Brown's bankruptcy estate satisfying a fraction of its allowed claim.

The central issue in this appeal is whether, in the ongoing district court action, Thermal Surgical can invoke claim preclusion offensively to secure a judgment against Brown for the balance of the allowed claim. On reconsideration of its initial decision, the district court concluded that it could, and on summary judgment granted Thermal Surgical a money judgment for the balance of the allowed claim.

In assessing this question of first impression, we conclude otherwise. We have serious doubts as to whether claim preclusion can *ever* be used offensively to compel a judgment rather than resist a claim; but we need not resolve the question because we conclude that application of claim preclusion *here* would be unfair because Brown had less incentive to contest the unlitigated claim in the bankruptcy proceeding.

Thus, we **VACATE** the district court's judgment and **REMAND** for further proceedings.

―――――――――

MARY TAYLOR GALLAGHER, Gullett, Sanford, Robinson & Martin, PLLC, Nashville, TN (Christopher, W. Cardwell, Gullett, Sanford, Robinson, & Martin, PLCC, Nashville, TN; Gary F. Karnedy, Ryan Long, Primmer Piper Eggleston & Cramer PC, Burlington, VT, *on the brief*) *for Plaintiff-Appellee.*

FRANK P. URSO, Law Office of Frank P. Urso, Rutland, VT, *for Defendant-Appellant*.

ROBINSON, *Circuit Judge*:

Defendant Jeff Brown is a former medical sales representative for Plaintiff Thermal Surgical, LLC ("Thermal Surgical"). In 2015, Thermal Surgical sued Brown in the United States District Court for the District of Vermont for allegedly breaching a non-compete agreement and his common law duty of loyalty and misappropriating trade secrets. The district court litigation was stayed in 2016 when Brown filed for Chapter 7 bankruptcy in the New Hampshire bankruptcy court.

In that bankruptcy proceeding, Thermal Surgical filed a proof of claim seeking $315,000 due to Brown's alleged breaches. Neither Brown nor the bankruptcy trustee ultimately objected to Thermal Surgical's proof of claim. After Brown waived his right to discharge, the bankruptcy court entered an order allowing Thermal Surgical's proof of claim in full. The bankruptcy trustee's final report reflected the bankruptcy court's allowance order, and when nobody objected, the bankruptcy trustee distributed $12,620.47 to Thermal Surgical.

The district court subsequently lifted the stay and, invoking claim preclusion, Thermal Surgical sought summary judgment for the balance of the

3

claim allowed by the bankruptcy court. Brown, representing himself, opposed, arguing that the bankruptcy proceeding didn't afford him sufficient due process, so claim preclusion should not apply.

The District of Vermont (Sessions, *J.*) initially denied Thermal Surgical's motion, concluding that allowing Thermal Surgical's proposed offensive use of claim preclusion in this case would be unfair. *Thermal Surgical, LLC v. Brown*, Nos. 2:15-cv-220, 2:19-cv-75, 2020 WL 3546823, at *5 (D. Vt. June 30, 2020) ("*Thermal Surgical I*"). At Thermal Surgical's request, the district court reconsidered its decision and concluded that claim preclusion did apply in this context. *Thermal Surgical, LLC v. Brown*, Nos. 2:15-cv-220, 2:19-cv-75, 2021 WL 5178503, at *2–3 (D. Vt. Feb. 8, 2021) ("*Thermal Surgical II*"). The district court entered judgment for Thermal Surgical for the balance of the allowed claim.

On appeal, Brown argues that the district court abused its discretion by deciding to reconsider its denial of Thermal Surgical's summary judgment motion absent any of the ordinary grounds for reconsideration. And he contends that the bankruptcy court's allowance of Thermal Surgical's uncontested claim does not constitute a final judgment that has a preclusive effect with respect to Thermal Surgical's claims against Brown in this case.

Because we agree with Brown on the second point, we need not address the first. Although we have recognized that a bankruptcy court's allowance of a claim serves as a final judgment that may preclude claims challenging that judgment, we have serious doubts as to whether preclusion can *ever* be used offensively to compel a judgment rather than resist a claim. We need not resolve the question because we conclude that even if a district court can potentially apply claim preclusion offensively as a general matter, it cannot do so if it would be unfair. And application of claim preclusion *here* would be unfair to Brown. Accordingly, we **VACATE** the district court's summary judgment for Thermal Surgical and **REMAND** to the district court for further proceedings.

## BACKGROUND

Thermal Surgical is the exclusive distributor for NuVasive, Inc. ("NuVasive"), which designs, manufactures, and markets certain medical devices used in spinal surgery. Thermal Surgical alleges that beginning in October 2014, its former employee Brown began working for a competitor and undercut sales and commissions for both Thermal Surgical and NuVasive. As a result, Thermal Surgical sued for damages in October 2015 alleging that Brown breached his contractual non-compete and non-solicitation obligations, breached the common law duty of loyalty, and misappropriated trade secrets. Brown answered the

5

complaint, asserted several counterclaims against Thermal Surgical, and brought a third-party claim against NuVasive.[1]

The district court litigation was stayed in September 2016 when Brown filed for Chapter 7 bankruptcy relief in the Bankruptcy Court for the District of New Hampshire. October 2017, Thermal Surgical filed an adversary action in the bankruptcy court alleging that Brown was being untruthful about his assets and objecting to discharge of Brown's debt.

In June of 2018, Thermal Surgical and NuVasive each filed a proof of claim in the bankruptcy case. Thermal Surgical sought $315,000 for lost commissions due to Brown's alleged breach of the non-compete agreement and his duty of loyalty, and attached to its proof of claim the complaint it filed in the District of Vermont. NuVasive sought $1.5 million based on lost sales because of Brown's alleged violation of the non-compete agreement and his duty of loyalty.

In September 2018, the bankruptcy trustee sought the court's approval of an agreement with NuVasive and Thermal Surgical in lieu of filing formal objections to their claims. Pursuant to that agreement, NuVasive would reduce its claim from

---

[1] Brown also brought third-party claims against two individual principals of Thermal Surgical, Gregory Sweet and Jason LeSage. After the bankruptcy proceedings described below, the district court granted these third-party defendants summary judgment in a ruling Brown does not challenge on appeal. *Thermal Surgical I*, 2020 WL 3546823, at *3. Because these claims do not bear on our analysis, we do not reference them in our discussion.

$1.5 million to $1.2 million in recognition of its recovery of $250,000 in a separate action against Brown's new employer, and in exchange for the trustee's agreement that the bankruptcy court could order dismissal of all of Brown's counterclaims and third-party claims in the District of Vermont action. As to Thermal Surgical's claim, the agreement provided that upon the court's approval of a separate settlement agreement in the adversary action authorizing the entry of a judgment for Thermal Surgical in the amount of $300,000, Thermal Surgical's proof of claim would be disallowed. Both NuVasive and Thermal Surgical would waive administrative claims. The parties simultaneously filed a joint motion for entry of a stipulated order providing that Thermal Surgical would dismiss its adversary action, and the bankruptcy court would enter a non-dischargeable judgment of $300,000 against Brown and in favor of Thermal Surgical.

Before the bankruptcy court ruled on these motions, Brown waived his right to discharge under 11 U.S.C. § 727(a)(10). The bankruptcy court issued an order approving the waiver in November 2018. Thereafter, the bankruptcy court dismissed the adversary proceeding pursuant to the parties' agreement, and the trustee orally moved to allow Thermal Surgical's claim.

In December 2018, the bankruptcy court entered an order allowing the NuVasive and Thermal Surgical proofs of claim (the "Allowance Order"). The

Allowance Order reduced NuVasive's claim from $1.5 million to $1.2 million; authorized Thermal Surgical, NuVasive, and its employees to file motions to dismiss the counterclaims and third-party claims Brown filed in the district court and deemed those claims resolved; and allowed Thermal Surgical's proof of claim in the amount of $315,000.

The bankruptcy trustee's final report, consistent with the Allowance Order, showed allowed amounts of $1.2 million for the NuVasive claim and $315,000 for the Thermal Surgical claim. It provided for distributions from the bankruptcy estate of $48,077.97 to NuVasive and $12,620.47 to Thermal Surgical. Nobody objected, and by July 2019, the bankruptcy trustee distributed the funds as planned. The uncompensated balance on NuVasive's claim was $1,151,922.03, and Thermal Surgical's was $302,379.53. Brown's bankruptcy proceeding was closed in December 2019.

Meanwhile, in May 2019, NuVasive filed a lawsuit in the District of Vermont (the "NuVasive lawsuit") echoing Thermal Surgical's claims and asserting that it was a third-party beneficiary of Brown's employment agreement with Thermal Surgical. The NuVasive lawsuit was then consolidated with the Thermal Surgical lawsuit. The district court lifted the stay, and NuVasive and Thermal Surgical sought summary judgment for the remaining balances on their allowed claims in

the bankruptcy court. They argued that the bankruptcy proceeding resolved all pending claims and they were entitled to judgments on the basis of claim preclusion. Brown opposed the motion arguing in part that he was not properly represented in the bankruptcy case, and he was denied due process.

In June 2020, the district court granted summary judgment to NuVasive and Thermal Surgical on Brown's counterclaims and third-party claims against them and denied them summary judgment with respect to their claims against Brown. *Thermal Surgical I*, 2020 WL 3546823, at *3–5. The district court emphasized that Thermal Surgical and NuVasive were attempting to use claim preclusion offensively as opposed to defensively and concluded that allowing that in this case would be unfair. *Id.* at *4–5.

At Thermal Surgical and NuVasive's request, the district court reconsidered its denial of summary judgment. *Thermal Surgical II*, 2021 WL 5178503, at *1. As to NuVasive's claims, the district court affirmed its denial of summary judgment because it wasn't clear that their claims in the district court were the same as their allowed claims in the bankruptcy court. *Id.* at *1–2. But the district court changed course on Thermal Surgical's claims. *Id.* at *2. Citing this Court's prior holding that an accepted proof of claim can serve as final judgment on the merits entitled to preclusive effect, and recognizing that Brown didn't contest Thermal Surgical's

9

proof of claim despite multiple opportunities to do so, the district court concluded that Thermal Surgical was entitled to summary judgment and thus reversed its previous decision. *Id.* After resolution of one additional counterclaim that Brown was permitted to file, and pursuant to the parties' stipulation, the district court subsequently dismissed NuVasive's claims and entered judgment for Thermal Surgical in the amount of $302,379.53, the remaining balance on the allowed claim in the bankruptcy court.[2] Brown timely appealed.

## DISCUSSION

Brown challenges both the district court's decision to reconsider its initial ruling and the merits of its summary judgment ruling on reconsideration. Because we conclude that the district court got it right on the merits in its first decision, we need not decide whether, wholly apart from the merits, the district court lacked proper grounds to reconsider its initial ruling.

We review the grant of summary judgment without deference to the district court's analysis. *See Loomis v. ACE American Insurance Company*, 91 F.4th 565, 572

---

[2] The district court originally dismissed NuVasive's claims without prejudice, but the parties' stipulation provided that the dismissal would be *with* prejudice if NuVasive did not refile its claims within six months. Because NuVasive did not do so, we are satisfied that the district court's judgment is now final and we have jurisdiction pursuant to 28 U.S.C. § 1291. *See Jewish People for the Betterment of Westhampton Beach v. Village of Westhampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015) (holding that plaintiffs disclaiming "any intent to revive their dismissed claim" removed any "potential obstacle to appellate jurisdiction" under § 1291).

(2d Cir. 2024).  Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[3]  We review the district court's application of claim preclusion without deference.  *EDP Medical Computer Systems, Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007).

Claim preclusion "prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 590 U.S. 405, 412 (2020); *see also Allen v. McCurry*, 449 U.S. 90, 94 (1980) (stating that claim preclusion "precludes the parties or their privies from relitigating issues that were or could have been raised in that action" after the court issues "a final judgment on the merits").  It applies "with full force" to matters that a bankruptcy court decides. *EDP Medical*, 480 F.3d at 624.  Claim preclusion applies in a later litigation "if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221–22 (2d Cir. 2012).

---

[3] In quotations from caselaw and the parties' briefing, this opinion omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

In challenging the district court's application of claim preclusion, Brown repeats the district court's pre-reconsideration assessment that Thermal Surgical cannot invoke claim preclusion offensively to compel a judgment on its claims. In response, Thermal Surgical argues that our decision in *EDP Medical* establishes that the bankruptcy court's allowance of its claims constitutes a final judgment with preclusive effect in future litigation.

We conclude that *EDP Medical* doesn't answer the decisive question here—whether Thermal Surgical can invoke the bankruptcy court's Allowance Order *offensively* to preclude Brown from defending against its claims.[4] We have serious doubts about whether claim preclusion can *ever* apply offensively, but need not resolve that broader question here. At a minimum, claim preclusion cannot apply offensively where its application would be unfair, and for several reasons, it would be unfair here.

*A.    EDP Medical is Inapposite*

In *EDP Medical*, the plaintiff, EDP Medical, filed for bankruptcy. 480 F.3d at 623. The Internal Revenue Service ("IRS") filed a proof of claim reflecting EDP Medical's pre-petition tax liability. *Id.* The bankruptcy trustee objected, and a

---

[4] The district court dismissed Brown's counterclaims *against* Thermal Surgical based on claim preclusion arising from the bankruptcy court's order. *Thermal Surgical I*, 2020 WL 3546823, at *3. Brown does not challenge this ruling on appeal.

hearing was scheduled. *Id.* Prior to the hearing, the IRS amended its proof of claim to add an additional amount. *Id.* Neither the trustee nor EDP Medical objected to the amended proof of claim and the bankruptcy court issued an order allowing it. *Id.* The trustee accordingly paid the United States Treasury in full satisfaction of the claim plus interest. *Id.* at 624. About a year after the bankruptcy case was closed, EDP Medical filed with the IRS a request for a refund of the full amount paid; when that request was denied, EDP Medical filed a civil lawsuit seeking the refund. *Id.* The district court granted the government summary judgment based in part on its conclusion that the bankruptcy court's allowance order had preclusive effect. *Id.* We agreed and held that "a bankruptcy court order allowing an uncontested proof of claim constitutes a final judgment and is thus a predicate" for claim preclusion. *Id.* at 625. In so holding, we rejected the argument that claim preclusion is not available because the amended proof of claim wasn't actually litigated on the merits. *Id.* at 626.

*EDP Medical* is instructive, but it doesn't answer the pivotal question here: whether Thermal Surgical can invoke claim preclusion *offensively* to compel a money judgment against Brown based on the allowed claim. In *EDP Medical*, the government invoked claim preclusion *defensively* to preclude EDP Medical from advancing a claim that was inconsistent with the bankruptcy court's judgment. *Id.*

13

at 624-25. Here, Thermal Surgical invokes the bankruptcy court's Allowance Order in an effort to preclude Brown from *defending* against Thermal Surgical's claims as opposed to preventing Brown from *advancing* his own affirmative claims. *EDP Medical* doesn't address this circumstance.

B.      *Offensive Claim Preclusion Generally*

Thermal Surgical's position is at odds with our general understanding of claim preclusion as a *defensive* tool. *See Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000) (noting that claim preclusion is an affirmative defense); *Robbins v. MED-1 Solutions, LLC*, 13 F.4th 652, 657 (7th Cir. 2021) ("[C]laim preclusion is a shield, not a sword."); Amy Coney Barrett, *Procedural Common Law*, 94 Va. L. Rev. 813, 830 (2008) ("Claim preclusion generally applies only to those asserting claims, not to those defending against them. . . .").

We have previously noted that "[f]or the past quarter of a century, we have assumed that claim preclusion may bar a litigation defense but we have not had a case in which we have found a defense to be so precluded." *Marcel Fashions Group, Inc. v. Lucky Brand Dungarees, Inc.*, 898 F.3d 232, 237 (2d Cir. 2018), *rev'd by Lucky Brand Dungarees*, 590 U.S. at 417. For example, in *Clarke v. Frank*, we explained that "[c]laim preclusion prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit," but then concluded that the

14

defendant wasn't precluded from raising a defense given the facts of that case. 960 F.2d 1146, 1150–51 (2d Cir. 1992).

In *Marcel Fashions Group*, we concluded that the defendant was precluded from raising an unlitigated defense that it could have raised in prior litigation. 898 F.3d at 237–41. The United States Supreme Court reversed that decision because it concluded that the subsequent litigation did not involve the same cause of action as the prior decided case. *Lucky Brand*, 590 U.S. at 413–15. In doing so, the Supreme Court noted that "[t]here may be good reasons to question any application of claim preclusion to defenses." *Id.* at 413 n.2. Specifically, it noted that "various considerations, other than actual merits, may govern whether to bring a defense" including the amount in controversy. *Id.* However, it explicitly declined to address "when (if ever) applying claim preclusion to defenses may be appropriate." *Id.*

Looking to our sister circuits, we have found no decision blessing the use of claim preclusion to bar *defense* of a claim rather than to preclude an affirmative claim. *See, e.g.*, *Robbins*, 13 F.4th at 657 (applying Indiana law and concluding that "[o]ffensive claim preclusion is nonexistent."); *Sharp Kabushiki Kaisha v. ThinkSharp, Inc.*, 448 F.3d 1368, 1372 (Fed. Cir. 2006) (rejecting offensive application of claim preclusion to bar challenger's opposition to trademark registration).

15

And for the reason identified by the Supreme Court, application of claim preclusion to bar a party from *defending* against a claim rather than barring a party from *advancing* a claim raises fairness concerns because claim preclusion applies to claims that *could have been litigated* even if they weren't, and a party defending against a claim may have good reasons separate from the merits to forego asserting a defense in a particular circumstance. *Lucky Brand*, 590 U.S at 413 n.2.

Of course, in the context of collateral attacks on final judgments and proceedings to enforce final judgments, defendants cannot raise new defenses or challenges to the underlying judgment. *Id.* at 416 (describing judgment enforcement actions and a collateral attack on a prior judgment as scenarios where "courts simply apply claim preclusion or issue preclusion to prohibit a claim or defense that would attack a previously decided claim"). The Supreme Court explained that claim preclusion "describes the rules formerly known as merger and bar," meaning:

> If the plaintiff wins, the entire claim is merged in the judgment; the plaintiff cannot bring a second independent action for additional relief, and the defendant cannot avoid the judgment by offering new defenses. But if the second lawsuit involves a new claim or cause of action, the parties may raise assertions or defenses that were omitted from the first lawsuit even though they were equally relevant to the first cause of action.

*Id.* at 412 (quoting 18 Wright & Miller's Federal Practice and Procedure § 4406 (3d ed. 2016)); *see also* Restatement (Second) of Judgments § 18(2) (1982) ("In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action.").

But here, Thermal Surgical is not seeking to enforce a money judgment already issued against Brown; it's seeking to *secure* a money judgment based on the bankruptcy court's allowance of its claim. As the Eleventh Circuit explained in a similar case, "The assertion of a claim in bankruptcy is, of course, not an attempt to recover a judgment against the debtor but to obtain a distributive share in the immediate assets of the proceeding." *Ziino v. Baker*, 613 F.3d 1326, 1328 (11th Cir. 2010). Therefore, "[a]n allowed claim in bankruptcy serves a different objective from that of" a civil judgment. *Id.* It "permits the claimant to participate in the distribution of the bankruptcy estate[,]" but it isn't "a judgment on which [the claimant] can execute against assets of the debtor." *Id.* at 1328–29.

Based on the above authority, we reiterate the Supreme Court's doubts about whether claim preclusion can ever apply offensively in this way—to preclude a party from *defending* against a claim based on a prior judgment, rather than to preclude a party from advancing a claim. *Lucky Brand*, 590 U.S. at 413 n.2.

17

## C.    *Fairness Considerations*

But we need not decide that broad question here.  We conclude that even if courts can apply offensive claim preclusion in some circumstances, they cannot do so when it would be unfair, and applying claim preclusion to support a judgment for Thermal Surgical here would be unfair.[5]

Our legal premise flows from the Supreme Court's application of the related doctrine of issue preclusion.  Issue preclusion bars a party from "relitigating an issue actually decided in a prior case and necessary to the judgment."  *Lucky Brand*, 590 U.S. at 411; *see also B & B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 148 (2015) ("[S]ubject to certain well-known exceptions, the general rule is that when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." (citing Restatement (Second) of Judgments § 27

---

[5]  We came to a similar conclusion in *Marcel Fashions Group*.  There, we instructed courts to consider the fairness factors outlined in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), before deciding to apply claim preclusion to bar a party from raising a defense to an affirmative claim. *Marcel Fashions Group*, 898 F.3d at 240–41 (concluding that "defense preclusion bars a party from raising a defense where . . . the district court, in its discretion, concludes that preclusion of the defense is appropriate because efficiency concerns outweigh any unfairness to the party whose defense would be precluded.").  Because the Supreme Court reversed on the ground that the later action did not share the same claim for relief as the earlier suit, it didn't consider whether the application of the fairness factors from *Parklane Hosiery* was appropriate in the claim preclusion context.  *Lucky Brand*, 590 U.S. at 415–17.

18

(1980)). In contrast to claim preclusion, issue preclusion applies only if an issue has been "actually litigated." *Lucky Brand*, 590 U.S. at 412. Issue preclusion doesn't apply here because Brown didn't object to Thermal Surgical's proof of claim in the bankruptcy court, and it is undisputed that the merits of Thermal Surgical's claim were not actually litigated and decided by the bankruptcy court. But we can draw lessons from the Supreme Court's treatment of this analogous doctrine.

The Supreme Court has recognized that *offensive* use of issue preclusion implicates different considerations than *defensive* application. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329–31 (1979).[6] Rather than disallow offensive issue preclusion altogether, the Court gave trial courts discretion to decide whether to apply offensive issue preclusion and cautioned that they should not allow the use of offensive issue preclusion where it "would be unfair to a defendant." *Id.* at 331.[7] Factors bearing on the fairness assessment in that case included whether the defendant had "every incentive to litigate [the prior action] fully and vigorously,"

---

[6] In *Parklane Hosiery*, the Court used the term "collateral estoppel" to describe what has come to be known as "issue preclusion." 439 U.S. at 329–31; *see also, e.g., Bravo-Fernandez v. United States*, 580 U.S. 5, 7 n.1 (2016) ("The parties use the expression 'collateral estoppel [],' but as this Court has observed, 'issue preclusion' is the more descriptive term."). We use the contemporary terminology in describing the Court's analysis.

[7] The Court also suggested that trial courts should be wary of applying offensive collateral estoppel in a way that "reward[s] a private plaintiff who could have joined in the previous action." *Parklane Hosiery*, 439 U.S. at 331–32. This consideration is inapposite here, where Thermal Surgical *did* join in the prior action.

whether the prior judgment was "inconsistent with any previous decision," and whether the subsequent action offered "procedural opportunities" to the defendant that were not available in the first action "of a kind that might be likely to cause a different result." *Id.* at 332.

Because *Parklane Hosiery* involved issue preclusion rather than claim preclusion, its analysis is not squarely applicable here. But the decision supports our conclusion that *even if* claim preclusion could potentially be applied offensively to bar defense of a claim, courts should not apply it if doing so would be unfair to the defendant.

And on these facts, we conclude it would be unfair. Brown's incentives to litigate Thermal Surgical's claims in the bankruptcy proceeding were quite different from his incentives in the district court. For one thing, as noted above, "An allowed claim in bankruptcy serves a different objective from that of a money judgment—it permits the claimant to participate in the distribution of the bankruptcy estate." *Ziino*, 613 F.3d at 1328. An allowed claim in bankruptcy is not an enforceable money judgment that can be attached to a debtor's future assets. *See id.* at 1328–29; Fed. R. Civ. P. 69(a)(1). Especially where, as here, the claims against a debtor cumulatively exceed the debtor's assets, a debtor may have little incentive to contest individual claims. *See Lucky Brand*, 590 U.S. at 413 n.2 (noting

that "[t]here may be good reasons to question any application of claim preclusion to defenses" because "various considerations, other than actual merits, may govern whether to bring a defense.").

True, Brown's waiver of the bankruptcy discharge could have increased his incentive to litigate Thermal Surgical's bankruptcy claims here[8] — but only if he had reason to believe the bankruptcy court's allowance of Thermal Surgical's claim would be tantamount to an enforceable money judgment. He likely didn't, because that concept is unprecedented.

Moreover, the record suggests that after Thermal Surgical filed its proof of claim, the parties negotiated an agreement in the adversary proceeding pursuant to which they asked the bankruptcy court to enter a judgment for Thermal Surgical in the amount of $300,000. Thereafter, and before the bankruptcy court ruled on the proposed settlement, Brown waived the bankruptcy discharge and the bankruptcy court dismissed the adversary action pursuant to the parties' stipulation. It would be odd to conclude that even though the bankruptcy court did not approve a money judgment for Thermal Surgical as apparently

---

[8] The anomalous situation presented in this case would not arise following a typical bankruptcy proceeding because creditors' pre-bankruptcy claims are usually discharged at the conclusion of a bankruptcy proceeding. *See* 11 U.S.C. § 727(a). Brown's waiver of this statutory discharge pursuant to 11 U.S.C. § 727(a)(10) is what opened the door to Thermal Surgical's resumption of its suit against Brown after the bankruptcy proceeding closed.

contemplated in a proposed settlement of the adversary action, Brown should have expected that the bankruptcy court's allowance of Thermal Surgical's claim had the identical effect.

Finally, Brown may have had a reduced incentive to contest the proof of claim because, of the $315,000 in liability allowed by the trustee in connection with Thermal Surgical's proof of claim, the trustee's final report provided for a distribution of only $12,620.47.

Importantly, Brown's defense of Thermal Surgical's claims against him would not amount to a collateral attack on a prior judgment. A comparison to *EDP Medical* illustrates this point. In *EDP Medical*, the plaintiff-debtor was seeking "a refund" of the amount distributed to the IRS in the bankruptcy proceeding. 480 F.3d at 624. It was essentially seeking, in a subsequent action, to undue the bankruptcy court's allowance of the government's proof of claim. In contrast, here, Brown merely seeks to defend against *additional* liability beyond the sums distributed to Thermal Surgical in the bankruptcy proceeding. By defending against Thermal Surgical's claims for further damages, he is not seeking a refund of the sums already distributed to Thermal Surgical in that proceeding. A win for Brown in this action would neither "nullify the initial judgment" nor "impair rights established in the initial action." *Lucky Brand*, 590 U.S. at 416.

22

As the Eleventh Circuit concluded in an analogous case, having obtained an allowed claim in a bankruptcy proceeding that did not culminate in a discharge of the debtor's liability, the creditor's "proper recourse [was] to file a direct action against [the debtor] for [the debtor's] breach of the promissory note obligations." *Ziino*, 613 F.3d at 1329. That is precisely what Thermal Surgical did here: having obtained an allowed claim in a bankruptcy case that did not end with a discharge order, it revived its direct action against Brown.

To prevail, Thermal Surgical must establish that it is entitled to relief against Brown on the merits. It can't rely on claim preclusion to make its case, and it can't wield it to deny Brown the opportunity to oppose its affirmative claim of liability. *See Sharp Kabushiki Kaisha*, 448 F.3d at 1372 (concluding that a party is "entitled to choose which opposition to defend, when the proceedings are not an attempt to evade the effect of a previous adverse judgment on the merits").

## CONCLUSION

Some future case may require us to consider whether claim preclusion can *ever* be used as a sword rather than as a shield, or at least whether that is true with respect to the effect of a bankruptcy court's allowance of a claim. We need not decide that question categorically in order to resolve this case. For the above reasons, we conclude that claim preclusion is not applicable here, and the district

23

court thus erred in awarding summary judgment to Thermal Surgical. We accordingly **VACATE** the district court's entry of summary judgment in Thermal Surgical's favor and **REMAND** the case for further proceedings consistent with this opinion.