5/19/2020 9:59:07 AM

# Compare Results

| Old File: | | New File: |
|---|---|---|
| **18-1086.pdf** | versus | **18-1086_new.pdf** |
| **14 pages (110 KB)** | | **14 pages (109 KB)** |
| 5/12/2020 3:21:46 PM | | 5/19/2020 9:58:14 AM |

**Total Changes**

**3**

**Content**

3 Replacements

0 Insertions

0 Deletions

**Styling and Annotations**

0 Styling

0 Annotations

Go to First Change (page 8)

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LUCKY BRAND DUNGAREES, INC., ET AL. *v.* MARCEL FASHIONS GROUP, INC.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 18–1086. Argued January 13, 2020—Decided May 14, 2020

Petitioners (collectively Lucky Brand) and respondent (Marcel) both use the word "Lucky" as part of their marks on jeans and other apparel. Marcel received a trademark registration for the phrase "Get Lucky," and Lucky Brand uses the registered trademark "Lucky Brand" and other marks with the word "Lucky." This has led to nearly 20 years of litigation, proceeding in three rounds. The first round resulted in a 2003 settlement agreement in which Lucky Brand agreed to stop using the phrase "Get Lucky" and Marcel agreed to release any claims regarding Lucky Brand's use of its own trademarks. In the second round (2005 Action), Lucky Brand sued Marcel and its licensee for violating its trademarks. Marcel filed several counterclaims turning, as relevant here, on Lucky Brand's alleged continued use of "Get Lucky," but it did not claim that Lucky Brand's use of its own marks alone infringed the "Get Lucky" mark. In both a motion to dismiss the counterclaims and an answer to them, Lucky Brand argued that the counterclaims were barred by the settlement agreement, but it did not invoke that defense later in the proceedings. The court in the 2005 Action permanently enjoined Lucky Brand from copying or imitating Marcel's "Get Lucky" mark, and a jury found against Lucky Brand on Marcel's remaining counterclaims. In the third round (2011 Action), Marcel sued Lucky Brand for continuing to infringe the "Get Lucky" mark, but it did not reprise its 2005 allegation about Lucky Brand's use of the "Get Lucky" phrase. After protracted litigation, Lucky Brand moved to dismiss, arguing—for the first time since early in the 2005 Action—that Marcel had released its claims in the settlement agreement. Marcel countered that Lucky Brand could not invoke the release defense because it could have pursued that defense in the 2005

2        LUCKY BRAND DUNGAREES, INC. *v.*
MARCEL FASHIONS GROUP, INC.

Syllabus

Action but did not.  The District Court granted Lucky Brand's motion
to dismiss.  The Second Circuit vacated and remanded, concluding that
"defense preclusion" prohibited Lucky Brand from raising an unliti-
gated defense that it should have raised earlier.

*Held*: Because Marcel's 2011 Action challenged different conduct—and
raised different claims—from the 2005 Action, Marcel cannot preclude
Lucky Brand from raising new defenses.  Pp. 6–12.

   (a) This case asks whether so-called "defense preclusion" is a valid
application of res judicata: a term comprising the doctrine of issue pre-
clusion, which precludes a party from relitigating an issue actually de-
cided in a prior action and necessary to the judgment, and the doctrine
of claim preclusion, which prevents parties from raising issues that
could have been raised and decided in a prior action.  Any preclusion
of defenses must, at a minimum, satisfy the strictures of issue preclu-
sion or claim preclusion.  See, *e.g.*, *Davis* v. *Brown*, 94 U. S. 423, 428.
Here, issue preclusion does not apply, so the causes of action must
share a "common nucleus of operative fact[s]" for claim preclusion to
apply, Restatement (Second) of Judgments §24, Comment *b*, p. 199.
Pp. 6–8.

   (b) Because the two suits here involved different marks and differ-
ent conduct occurring at different times, they did not share a "common
nucleus of operative facts."   The 2005 claims depended on Lucky
Brand's alleged use of "Get Lucky."   But in the 2011 Action, Marcel
alleged that the infringement was Lucky Brand's use of its other marks
containing the word "Lucky," not any use of "Get Lucky" itself.  The
conduct in the 2011 Action also occurred after the conclusion of the
2005 Action.  But claim preclusion generally "'does not bar claims that
are predicated on events that postdate the filing of the initial com-
plaint,'" *Whole Woman's Health* v. *Hellerstedt*, 579 U. S. ___, ___, be-
cause events occurring after a plaintiff files suit often give rise to new
"operative facts" creating a new claim to relief.  Pp. 8–10.

   (c) Marcel claims that treatises and this Court's cases support a ver-
sion of "defense preclusion" that extends to the facts of this case.  But
none of those authorities describe scenarios applicable here, and they
are unlikely to stand for anything more than that traditional claim or
issue preclusion principles may bar defenses raised in a subsequent
suit—principles that do not bar Lucky Brand's release defense here.
Pp. 10–12.

898 F. 3d 232, reversed and remanded.

   SOTOMAYOR, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 18–1086

## LUCKY BRAND DUNGAREES, INC., ET AL., PETITIONERS *v.* MARCEL FASHIONS GROUP, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[May 14, 2020]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

This case arises from protracted litigation between petitioners Lucky Brand Dungarees, Inc., and others (collectively Lucky Brand) and respondent Marcel Fashions Group, Inc. (Marcel). In the latest lawsuit between the two, Lucky Brand asserted a defense against Marcel that it had not pressed fully in a preceding suit between the parties. This Court is asked to determine whether Lucky Brand's failure to litigate the defense in the earlier suit barred Lucky Brand from invoking it in the later suit. Because the parties agree that, at a minimum, the preclusion of such a defense in this context requires that the two suits share the same claim to relief—and because we find that the two suits here did not—Lucky Brand was not barred from raising its defense in the later action.

I

Marcel and Lucky Brand both sell jeans and other apparel. Both entities also use the word "Lucky" as part of their marks on clothing. In 1986, Marcel received a federal trademark registration for "Get Lucky"; a few years later,

2 LUCKY BRAND DUNGAREES, INC. *v.*
MARCEL FASHIONS GROUP, INC.

Opinion of the Court

in 1990, Lucky Brand began selling apparel using the registered trademark "Lucky Brand" and other marks that include the word "Lucky." 779 F. 3d 102, 105 (CA2 2015).

Three categories of marks are at issue in this case: Marcel's "Get Lucky" mark; Lucky Brand's "Lucky Brand" mark; and various other marks owned by Lucky Brand that contain the word "Lucky." These trademarks have led to nearly 20 years of litigation between the two companies, proceeding in three rounds.

A

In 2001—the first round—Marcel sued Lucky Brand, alleging that Lucky Brand's use of the phrase "Get Lucky" in advertisements infringed Marcel's trademark. In 2003, the parties signed a settlement agreement. As part of the deal, Lucky Brand agreed to stop using the phrase "Get Lucky." App. 191. In exchange, Marcel agreed to release any claims regarding Lucky Brand's use of its own trademarks. *Id.*, at 191–192.

B

The ink was barely dry on the settlement agreement when, in 2005, the parties began a second round of litigation (2005 Action). Lucky Brand filed suit, alleging that Marcel and its licensee violated its trademarks by copying its designs and logos in a new clothing line. As relevant here, Marcel filed several counterclaims that all turned, in large part, on Lucky Brand's alleged continued use of "Get Lucky": One batch of allegations asserted that Lucky Brand had continued to use Marcel's "Get Lucky" mark in violation of the settlement agreement, while others alleged that Lucky Brand's use of the phrase "Get Lucky" and "Lucky Brand" together was "confusingly similar to"—and thus infringed—Marcel's "Get Lucky" mark. Defendants' Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' Complaint in No. 1:05–cv–06757 (SDNY), Doc. 40–2, p. 39;

see *id.*, at 34–41. None of Marcel's counterclaims alleged that Lucky Brand's use of its own marks alone—*i.e.*, independent of any alleged use of "Get Lucky"—infringed Marcel's "Get Lucky" mark.

Lucky Brand moved to dismiss the counterclaims, alleging that they were barred by the release provision of the settlement agreement. After the District Court denied the motion without prejudice, Lucky Brand noted the release defense once more in its answer to Marcel's counterclaims. But as the 2005 Action proceeded, Lucky Brand never again invoked the release defense.

The 2005 Action concluded in two phases. First, as a sanction for misconduct during discovery, the District Court concluded that Lucky Brand violated the settlement agreement by continuing to use "Get Lucky" and permanently enjoined Lucky Brand from copying or imitating Marcel's "Get Lucky" mark. Order Granting Partial Summary Judgment and Injunction in No. 1:05–cv–06757, Doc. 183; see also App. 203–204. The injunction did not enjoin, or even mention, Lucky Brand's use of any other marks or phrases containing the word "Lucky." Order Granting Partial Summary Judgment and Injunction, Doc. 183. The case then proceeded to trial. The jury found against Lucky Brand on Marcel's remaining counterclaims—those that alleged infringement from Lucky Brand's continued use of the "Get Lucky" catchphrase alongside its own marks. See Brief for Respondent 52.

C

In April 2011, the third round of litigation began: Marcel filed an action against Lucky Brand (2011 Action), maintaining that Lucky Brand continued to infringe Marcel's "Get Lucky" mark and, in so doing, contravened the judgment issued in the 2005 Action.

This complaint did not reprise Marcel's earlier allegation (in the 2005 Action) that Lucky Brand continued to use the

"Get Lucky" phrase. Marcel argued only that Lucky Brand's continued, post-2010 use of Lucky Brand's own marks—some of which used the word "Lucky"—infringed Marcel's "Get Lucky" mark in a manner that (according to Marcel) was previously found infringing.[1] Marcel requested that the District Court enjoin Lucky Brand from using any of Lucky Brand's marks containing the word "Lucky."

The District Court granted Lucky Brand summary judgment, concluding that Marcel's claims in the 2011 Action were essentially the same as its counterclaims in the 2005 Action.

But the Court of Appeals for the Second Circuit disagreed. 779 F. 3d 102. The court concluded that Marcel's claims in the 2011 Action were distinct from those it had asserted in the 2005 Action, because the claims at issue in the 2005 Action were "for earlier infringements." *Id.*, at 110. As the court noted, "[w]inning a judgment . . . does not deprive the plaintiff of the right to sue" for the defendant's "subsequent similar violations." *Id.*, at 107.

The Second Circuit further rejected Marcel's request to hold Lucky Brand in contempt for violating the injunction issued in the 2005 Action. The court noted that the conduct at issue in the 2011 Action was Lucky Brand's use of its own marks—not the use of the phrase "Get Lucky." By contrast, the 2005 injunction prohibited Lucky Brand from using the "Get Lucky" mark—not Lucky Brand's own marks that happened to contain the word "Lucky." *Id.*, at 111. Moreover, the court reasoned that the jury in the 2005 Action had been

————————
[1] See Complaint for Injunctive Relief and Trademark Infringement in No. 1:11–cv–05523 (SDNY), Doc. 1, ¶15 ("Despite the entry of the [2005 Action judgment], [Lucky Brand] ha[s] continued to willfully . . . infringe [Marcel's] GET LUCKY mark by using the Lucky Brand marks in the identical manner and form and on the same goods for which [it] w[as] found liable for infringement"); *id.*, ¶20 ("Despite the entry of the" 2005 Action judgment, Lucky Brand has "continued its uninterrupted and willful use of the Lucky Brand marks and any other trademarks including the word 'Lucky'").

"free to find infringement of Marcel's 'Get Lucky' mark based solely on Lucky Brand's use of [the phrase] 'Get Lucky.'" *Id.*, at 112. The court vacated and remanded for further proceedings.

On remand to the District Court, Lucky Brand moved to dismiss, arguing—for the first time since its motion to dismiss and answer in the 2005 Action—that Marcel had released its claims by entering the settlement agreement. Marcel countered that Lucky Brand was precluded from invoking the release defense, because it could have pursued the defense fully in the 2005 Action but had neglected to do so. The District Court granted Lucky Brand's motion to dismiss, holding that it could assert its release defense and that the settlement agreement indeed barred Marcel's claims.

The Second Circuit vacated and remanded, concluding that a doctrine it termed "defense preclusion" prohibited Lucky Brand from raising the release defense in the 2011 Action. 898 F. 3d 232 (2018). Noting that a different category of preclusion—issue preclusion—may be wielded against a defendant, see *Parklane Hosiery Co.* v. *Shore*, 439 U. S. 322 (1979), the court reasoned that the same should be true of claim preclusion: A defendant should be precluded from raising an unlitigated defense that it should have raised earlier. The panel then held that "defense preclusion" bars a party from raising a defense where: "(i) a previous action involved an adjudication on the merits"; "(ii) the previous action involved the same parties"; "(iii) the defense was either asserted or could have been asserted, in the prior action"; and "(iv) the district court, in its discretion, concludes that preclusion of the defense is appropriate." 898 F. 3d, at 241. Finding each factor satisfied in this case, the panel vacated the District Court's judgment. We granted certiorari, 588 U. S. \_\_\_ (2019), to resolve differences among the Circuits regarding when, if ever, claim

6          LUCKY BRAND DUNGAREES, INC. *v.*
MARCEL FASHIONS GROUP, INC.

Opinion of the Court

preclusion applies to defenses raised in a later suit. Compare 898 F. 3d, at 241, with *Hallco Mfg. Co.* v. *Foster*, 256 F. 3d 1290, 1297–1298 (CA Fed. 2001); *McKinnon* v. *Blue Cross and Blue Shield of Alabama*, 935 F. 2d 1187, 1192 (CA11 1991).

## II

### A

This case asks whether so-called "defense preclusion" is a valid application of res judicata: a term that now comprises two distinct doctrines regarding the preclusive effect of prior litigation. 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §4402 (3d ed. 2016) (Wright & Miller). The first is issue preclusion (sometimes called collateral estoppel), which precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment. *Allen* v. *McCurry*, 449 U. S. 90, 94 (1980); see *Parklane Hosiery*, 439 U. S., at 326, n. 5.

The second doctrine is claim preclusion (sometimes itself called res judicata). Unlike issue preclusion, claim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated. If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown* v. *Felsen*, 442 U. S. 127, 131 (1979); see also Wright & Miller §4407. Suits involve the same claim (or "cause of action") when they "'aris[e] from the same transaction,'" *United States* v. *Tohono O'odham Nation*, 563 U. S. 307, 316 (2011) (quoting *Kremer* v. *Chemical Constr. Corp.*, 456 U. S. 461, 482, n. 22 (1982)), or involve a "common nucleus of operative facts," Restatement (Second) of Judgments §24, Comment *b*, p. 199 (1982) (Restatement (Second)).

Put another way, claim preclusion "describes the rules formerly known as 'merger' and 'bar.'" *Taylor* v. *Sturgell*, 553 U. S. 880, 892, n. 5 (2008). "If the plaintiff wins, the entire claim is merged in the judgment; the plaintiff cannot bring a second independent action for additional relief, and the defendant cannot avoid the judgment by offering new defenses." Wright & Miller §4406. But "[i]f the second lawsuit involves a new claim or cause of action, the parties may raise assertions or defenses that were omitted from the first lawsuit even though they were equally relevant to the first cause of action." *Ibid.*

As the Second Circuit itself seemed to recognize, see 898 F. 3d, at 236–237, this Court has never explicitly recognized "defense preclusion" as a standalone category of res judicata, unmoored from the two guideposts of issue preclusion and claim preclusion. Instead, our case law indicates that any such preclusion of defenses must, at a minimum, satisfy the strictures of issue preclusion or claim preclusion. See, *e.g.*, *Davis* v. *Brown*, 94 U. S. 423, 428 (1877) (holding that where two lawsuits involved different claims, preclusion operates "only upon the matter actually at issue and determined in the original action").[2] The parties thus agree that where, as here, issue preclusion does not apply, a defense can be barred only if the "causes of action are the

_____

[2] There may be good reasons to question any application of claim preclusion to defenses. It has been noted that in suits involving successive claims against the same defendant, courts often "assum[e] that the defendant may raise defenses in the second action that were not raised in the first, even though they were equally available and relevant in both actions." Wright & Miller §4414. This is because "[v]arious considerations, other than actual merits, may govern" whether to bring a defense, "such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation, and [a party's] own situation." *Cromwell* v. *County of Sac*, 94 U. S. 351, 356 (1877). Here, however, this Court need not determine when (if ever) applying claim preclusion to defenses may be appropriate, because a necessary predicate—identity of claims—is lacking.

8        LUCKY BRAND DUNGAREES, INC. *v.*
MARCEL FASHIONS GROUP, INC.

Opinion of the Court

same" in the two suits—that is, where they share a "'common nucleus of operative fact[s].'" Brief for Respondent 2, 27, 31, 50; accord, Reply Brief 3.

### B

Put simply, the two suits here were grounded on different conduct, involving different marks, occurring at different times. They thus did not share a "common nucleus of operative facts." Restatement (Second) §24, Comment *b*, at 199.

To start, claims to relief may be the same for the purposes of claim preclusion if, among other things, "'a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action.'" Wright & Miller §4407. Here, however, the 2011 Action did not imperil the judgment of the 2005 Action because the lawsuits involved both different conduct and different trademarks.

In the 2005 Action, Marcel alleged that Lucky Brand infringed Marcel's "Get Lucky" mark both by directly imitating its "Get Lucky" mark and by using the "Get Lucky" slogan alongside Lucky Brand's other marks in a way that created consumer confusion. Brief for Respondent 52. Marcel appears to admit, thus, that its claims in the 2005 Action depended on Lucky Brand's alleged use of "Get Lucky." *Id.,* at 9–10 ("Marcel's reverse-confusion theory [in the 2005 Action] depended, in part, on Lucky's continued imitation of the GET LUCKY mark").

By contrast, the 2011 Action did not involve any alleged use of the "Get Lucky" phrase. Indeed, Lucky Brand had been enjoined in the 2005 Action from using "Get Lucky," and in the 2011 Action, Lucky Brand was found not to have violated that injunction. 779 F. 3d, at 111–112. The parties thus do not argue that Lucky Brand continued to use "Get Lucky" after the 2005 Action concluded, and at oral argument, counsel for Marcel appeared to confirm that Marcel's claims in the 2011 Action did not allege that Lucky Brand

continued to use "Get Lucky." Tr. of Oral Arg. 46. Instead, Marcel alleged in the 2011 Action that Lucky Brand committed infringement by using Lucky Brand's own marks containing the word "Lucky"—not the "Get Lucky" mark itself. Plainly, then, the 2011 Action challenged different conduct, involving different marks.

Not only that, but the complained-of conduct in the 2011 Action occurred after the conclusion of the 2005 Action. Claim preclusion generally "does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Whole Woman's Health* v. *Hellerstedt*, 579 U. S. ___, ___ (2016) (slip op., at 12) (internal quotation marks omitted); *Lawlor* v. *National Screen Service Corp.*, 349 U. S. 322, 327–328 (1955) (holding that two suits were not "based on the same cause of action," because "[t]he conduct presently complained of was all subsequent to" the prior judgment and it "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case"). This is for good reason: Events that occur after the plaintiff files suit often give rise to new "[m]aterial operative facts" that "in themselves, or taken in conjunction with the antecedent facts," create a new claim to relief. Restatement (Second) §24, Comment *f*, at 203; 18 J. Moore, D. Coquillette, G. Joseph, G. Vairo, & C. Varner, Federal Practice §131.22[1], p. 131–55, n. 1 (3d ed. 2019) (citing cases where "[n]ew facts create[d a] new claim").

This principle takes on particular force in the trademark context, where the enforceability of a mark and likelihood of confusion between marks often turns on extrinsic facts that change over time. As Lucky Brand points out, liability for trademark infringement turns on marketplace realities that can change dramatically from year to year. Brief for Petitioners 42–45. It is no surprise, then, that the Second Circuit held that Marcel's 2011 Action claims were not barred by the 2005 Action. By the same token, the 2005

Action could not bar Lucky Brand's 2011 defenses.

At bottom, the 2011 Action involved different marks, different legal theories, and different conduct—occurring at different times. Because the two suits thus lacked a "common nucleus of operative facts," claim preclusion did not and could not bar Lucky Brand from asserting its settlement agreement defense in the 2011 Action.

### III

Resisting this conclusion, Marcel points to treatises and this Court's cases, arguing that they support a version of "defense preclusion" doctrine that extends to the facts of this case. Brief for Respondent 24–26. But these authorities do no such thing. As an initial matter, regardless of what those authorities might imply about "defense preclusion," none of them describe scenarios applicable here. Moreover, we doubt that these authorities stand for anything more than that traditional claim- or issue-preclusion principles may bar defenses raised in a subsequent suit—principles that, as explained above, do not bar Lucky Brand's release defense here.

Take, for example, cases that involve either judgment enforcement or a collateral attack on a prior judgment. *Id.*, at 26–35. In the former scenario, a party takes action to enforce a prior judgment already issued against another; in the latter, a party seeks to avoid the effect of a prior judgment by bringing a suit to undo it. If, in either situation, a different outcome in the second action "would nullify the initial judgment or would impair rights established in the initial action," preclusion principles would be at play. Restatement (Second) §22(b), at 185; Wright & Miller §4414. In both scenarios, courts simply apply claim preclusion or issue preclusion to prohibit a claim or defense that would

attack a previously decided claim.[3]  But these principles do not preclude defendants from asserting defenses to new claims, which is precisely what Marcel would have us do here.

In any event, judgment-enforcement and collateral-attack scenarios are far afield from the circumstances of this case.  Lucky Brand's defense in the 2011 Action did not threaten the judgment issued in the 2005 Action or, as Marcel argues, "achieve the same practical result" that the above-mentioned principles seek to avoid.  Brief for Respondent 31–32.  Indeed, while the judgment in the 2005 Action plainly prohibited Lucky Brand from using "Get Lucky," it did not do the same with respect to Lucky Brand's continued, standalone use of its own marks containing the word "Lucky"—the only conduct at issue in the 2011 Action.  Put simply, Lucky Brand's defense to new claims in the 2011 Action did not risk impairing the 2005 judgment.

Nor do cases like *Beloit* v. *Morgan*, 7 Wall. 619 (1869), aid Marcel.  See Brief for Respondent 32–33.  To be sure, *Beloit* held that a defendant in a second suit over bonds "of the same issue" was precluded from raising a defense it had not raised in the first suit.  7 Wall., at 620.  But the Court there

———————————

[3] One might ask: If any preclusion of defenses (under the claim-preclusion rubric) requires identity of claims in two suits, how could the second similar suit have avoided standard claim preclusion in the first place?  Different contexts may yield different answers.  In a judgment-enforcement context, the answer may be that claim preclusion applies only "to a final judgment rendered in an action *separate* from that in which the doctrine is asserted."  18 J. Moore, D. Coquillette, G. Joseph, G. Vairo, & C. Varner, Federal Practice §131.31[1], p. 131–116 (3d ed. 2019) (emphasis added).  Thus—although claim preclusion does apply to a later, standalone suit seeking relief that could have been obtained in the first— it "is not applicable to . . . efforts to obtain supplemental relief in the original action, or direct attacks on the judgment."  *Ibid* (footnote deleted).  The upshot is that—even if a court deems the underlying core of operative facts to be the same—a plaintiff in that circumstance is not precluded from enforcing its rights with respect to continuing wrongful conduct.

explained that the judgment in the first suit "established conclusively the original validity of the securities described in the bill, and the liability of the town to pay them." *Id.*, at 623. In other words, by challenging the validity of all bonds of the same issue, the defense in the second suit would have threatened the validity of the judgment in the first suit. The same cannot be said of the defense raised in the 2011 Action vis-à-vis the judgment in the 2005 Action.

\*     \*     \*

At bottom, Marcel's 2011 Action challenged different conduct—and raised different claims—from the 2005 Action. Under those circumstances, Marcel cannot preclude Lucky Brand from raising new defenses. The judgment of the Second Circuit is therefore reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*