# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

**No. 22-7002**                    **September Term, 2022**

FILED ON: JULY 14, 2023

KIM KEISTER,

               APPELLANT

v.

AMERICAN ASSOCIATION OF RETIRED PERSONS, INC.,

               APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-02935)

———

Before: SRINIVASAN, *Chief Judge*, WILKINS, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties. The panel has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED**.

\*     \*     \*

Appellant Kim Keister filed suit in the District of Columbia District Court against the American Association of Retired Persons ("AARP"), alleging misrepresentation and interference based on AARP misleading Keister regarding his signing of a severance agreement and how it would impact his ability to seek Long Term Disability Benefits, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). The District Court dismissed the claim

1

under *res judicata*.   We affirm, as Keister's action is barred by claim preclusion.


**I.**


In April 2004, AARP hired Keister as a news and policy executive editor.   During his employment, Keister suffered a stroke.   As a result, Keister lost the ability to understand simple sentences and would "consistently make word-choice and grammatical mistakes."   On August 24, 2016, Keister began visiting a speech pathologist to improve his language loss and cognitive skills to return to work.   But when Keister attempted to return to work, he quickly realized that he had not regained his cognitive skills to their pre-stroke functionality and requested additional time to recover.


On February 3, 2017, Keister applied for short term disability and was approved by Aetna on April 21, 2017.   Before Keister's short term disability benefits expired, he applied to Aetna for Long Term Disability Benefits.   On July 18, 2017, Aetna denied his application for Long Term Disability Benefits because it "lacked sufficient evidence to prove Mr. Keister was unable to work."   Keister appealed the denial of his application for long term disability benefits, but Aetna upheld its decision on June 13, 2018.


Before Aetna's decision on Keister's appeal of his denial of Long Term Disability Benefits, AARP officials presented Keister with a Severance Agreement.   Keister signed the Agreement, including its "general release of claims" provision in exchange for severance pay.   The Release provided:

> In consideration of the promises and benefits contained in this Agreement . . . you hereby fully and forever waive, discharge, and release AARP . . . from any and all claims for damages, personal injuries, discrimination, retaliation, reinstatement, or other relief that you may have . . . based upon your employment, separation, and/or any event or transaction that occurred prior to your signing this Agreement.

*Keister v. AARP*, No. 1:19-CV-2935-FYP, 2021 WL 5865444, at \*2 (D.D.C. Dec. 9, 2021) ("*Keister II*").   The Release also precluded "*any other legal or equitable claim of any kind, whether based upon statute, contract, tort, common law, ordinance, regulation or public policy.*"   *Id.* (emphasis added).   In addition, the Release provided:

> It is expressly agreed and understood that this Agreement constitutes a GENERAL RELEASE.   You understand that you are releasing claims that you may not know about.   This is your knowing and voluntary intent, even though you recognize that someday you might learn that some or all of the facts you currently believe to be true are untrue and even though you might then regret having signed this release.   It is further agreed that this consideration shall settle and compromise any claims you have, or may have, whether known or unknown, that existed prior to the date of

2

your signature.

*Id.* Keister then acknowledged that he had not "relied upon any representation or statement, written or oral, not set forth" in the Agreement. *Id.* at *2 n.2. After this acknowledgment, Keister signed the Severance Agreement.

## II.

Four months after Keister's appeal for Long Term Disability Benefits was denied by Aetna, he filed a lawsuit against Aetna and AARP Benefits Committee, a wholly owned subsidiary of AARP, alleging that both entities wrongfully denied his Long Term Disability Benefits under ERISA. *See Keister v. AARP Benefits Committee*, 410 F. Supp. 3d 244, 248 (D.D.C. 2019) ("*Keister I*"). Keister alleged that "AARP representatives knew [his] benefits had been denied and did not inform him that he would need to file his appeal before executing his severance agreement." *Id.* at 258. In addition, Keister argued that he "may have been misled with regard to what he was signing." *See id.* at 257. In response, AARP Benefits Committee moved for summary judgment, arguing that Keister's claim was barred because he waived his claim for benefits when he signed the Severance Agreement and received pay in exchange for his general release. *Id.* at 249. Aetna filed a separate motion arguing the same. *Id.*

The court granted summary judgment in favor of AARP Benefits Committee and Aetna, *see id.* at 261, reasoning that "by signing the separation agreement, Keister waived his right to bring [his] claim for long-term disability benefits, which means that his case cannot proceed as a matter of law," *id.* at 247. The court also noted that there was "no evidence of a fraudulent misrepresentation." *Id.* at 261.

Before Keister received a final judgment in *Keister I*, he brought the instant case, *Keister II*, against AARP. Keister alleged that AARP (1) misrepresented the effect of the Severance Agreement on his pursuit for Long Term Disability Benefits, and (2) intentionally interfered with his attainment of those benefits. Keister contends that AARP's human resources representatives were aware of his medical conditions, knew of his pursuit of Long Term Disability Benefits, and breached their fiduciary duties to disclose to him how signing the Severance Agreement would impact his pursuit of Long Term Disability Benefits on appeal. AARP moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because his claims were barred by the doctrines of claim and issue preclusion. The District Court agreed. Keister timely appealed.

## III.

The issue on appeal is whether Keister's ERISA claim alleging misrepresentation was barred by claim or issue preclusion, which collectively are referred to as the doctrine of *res judicata*. *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020). "The

3

doctrine of *res judicata* prevents repetitious litigation involving the same cause of action or same issues." *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). Claim preclusion, specifically, holds that "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Drake v. F.A.A.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)). Two cases trigger the same cause of action when they involve the "same 'nucleus of fact.'" *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984) (quotations omitted). And non-party "privies" are those who share a "substantive legal relationship between the person to be bound and a party to the judgment." *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (cleaned up). Thus, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added).

Keister argues that the ERISA claim raised in this case and the claims raised in *Keister I* do not share the "same nucleus of fact" because this claim relies on misrepresentations from "discussions between AARP human resources and [him]" as opposed to AARP Benefits Committee members. He further argues that *Keister I* only required the court to look at "the severance agreement language [which was interpreted] in such a way [as] to preclude [Keister from] continuing with the appeal process and [regaining] ERISA rights associated with the denial of a long-term disability benefits." Appellant's Br. 8.

First, we must determine whether the merits in *Keister I* and this claim are based on the same cause of action. Contrary to Keister's contention that the facts are dissimilar, he made the same misrepresentation arguments in *Keister I*. Specifically, he argued that "AARP representatives knew [his] benefits had been denied and did not inform him that he would need to file his appeal before executing his severance agreement." *Keister I*, 410 F. Supp. 3d at 258. In addition, Keister argued that he "may have been misled with regard to what he was signing." *Id.* at 257. In *Keister II*, he argued the same facts: (1) "AARP human resource representative[s] intentionally convinced [him] into signing the severance agreement," and (2) that "AARP misled [him] knowing his intentions to secure his benefits and without informing him how his rights would be negatively impacted if he signed the severance agreement." J.A. 9–10. In addition, Keister alleged "AARP representatives who were working with [him] at the time misrepresented to [him] the effect of the severance agreement on his ERISA rights." *Id.* at 9.

Keister *could have* brought the same claim based on the conduct of AARP human resource representatives against AARP in *Keister I*. Nonetheless, the allegations in the complaint and the facts relied on in the judgment in *Keister I* make clear that the underlying facts are the same. Thus, Keister's current claims implicate the "same cause of action" as *Keister I* and derive from a common "nucleus."

Second, we must determine whether Keister brought this action against the same parties or their non-party "privies" as was brought in *Keister I*.

4

Keister contends that AARP was not a party in *Keister I*, but his opening brief did not argue that AARP was not in privity with AARP Benefits Committee.  In its responsive brief, *see* Appellee Br. 12, AARP argued that the District Court in *Keister I* had previously found that the AARP Benefits Committee is a wholly owned business subsidiary of AARP, and thus the AARP and AARP Benefits Committee are in privity.  Keister did not file a reply brief and has never rebutted this contention, either factually or legally.  Accordingly, Keister forfeits any argument that AARP and AARP Benefits Committee are not in privity.  *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) (noting a party forfeits an argument by failing to raise it in the opening brief or by only mentioning it "in the most skeletal way").

\* \* \*

For the foregoing reasons, we affirm the District Court's grant of the AARP's Motion to Dismiss because Keister's lawsuit is barred by claim preclusion.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.   The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc.   See FED. R. CIV. P. 31(b); D.C. CIR. R. 41(a)(1).

*So Ordered*.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:  /s/
Daniel J. Reidy
Deputy Clerk

5