24CA0194 Estate of Scaer 01-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0194
Boulder County District Court No. 23PR30668
Honorable Dea M. Lindsey, Judge

---

In re the Estate of Robert Charles Scaer, deceased.

Kathleen Scaer,

Appellant,

v.

Michael Scaer,

Appellee.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE FOX
Gomez and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 30, 2025

---

Jorgensen, Brownell & Pepin, P.C., Anne B. Jorgensen, Longmont, Colorado, for Appellant

Emeson & Zale LLC, Brian S. Emeson, Boulder, Colorado, for Appellee

¶ 1 Kathleen Scaer appeals the district court's order denying her petition to compel an inventory and accounting (the Petition) from Michael Scaer, the attorney-in-fact for the decedent, Robert Charles Scaer.[1] We affirm.

## I. Background

¶ 2 In 2012, Robert executed a durable power of attorney appointing Michael as his attorney-in-fact. In 2019, the power of attorney was filed in Boulder County. Michael acted in his capacity as Robert's attorney-in-fact from August 2019 until Robert's death in November 2021. Robert was survived by four adult children, Kathleen, Michael, Andrew Scaer, and Amanda Angha. In May 2022, Amanda initiated a probate proceeding (the 2022 case), and the court appointed her as personal representative of Robert's estate.[2] On July 5, 2023, the district court entered an order for the final settlement of the estate pursuant to section 15-12-1001,

---

[1] For clarity, we respectfully refer to each party by their first name throughout this opinion.

[2] We do not have the record for the 2022 case before us on appeal, but we can take judicial notice of relevant filings in the 2022 case because it is a related proceeding. *See Vento v. Colo. Nat'l Bank*, 985 P.2d 48, 52 (Colo. App. 1999) ("[A] court may take judicial notice of the contents of court records in a related proceeding.").

C.R.S. 2024. In the order, the court determined that "[w]ritten objections to the proposed final settlement, if any, have been resolved."

¶ 3    On July 28, 2023, Kathleen objected (the Amended Objection) to the final settlement, requesting that the estate remain open. She asserted that the documentation supporting the personal representative's final accounting was insufficient. She also asked that the estate remain open so she could (1) "formally request that [Michael] provide her with an accounting and inventory of the assets and actions taken in his capacity as attorney-in-fact for [Robert] from the date he began acting in said capacity through [Robert's] death" and (2) "investigate whether [Michael] breached his fiduciary duty to [Robert] as his attorney-in-fact."

¶ 4    On August 14, 2023, Kathleen's attorney sent Michael a letter demanding "a full-accounting of all transactions and expenditures made by [Michael] in [his] capacity as Attorney-in-Fact from the date [he] began acting in said capacity through the time of [Robert's] death." She also requested all "checks, deposits including supporting documents, bank statements, investment statements, and receipts." The letter gave Michael thirty days to comply, noting

2

Kathleen's intent to petition the court for the requested information should he fail to timely respond.

¶ 5     Forty-four days later, on September 27, 2023, the court denied the Amended Objection. The court found the request untimely because Kathleen failed to object "on or before the hearing for Final Settlement on June 30, 2023." *See* C.R.P.P. 42(a). It also denied the Amended Objection on the merits because the final accounting complied with C.R.P.P. 31 and there was no evidence of fraud or bad faith. Two days later, the court entered a decree of final discharge, finding that Amanda had complied with the order for final settlement and discharging her as personal representative. Kathleen did not appeal the decree of final discharge.

¶ 6     On November 13, 2023, Kathleen initiated a new case (the 2023 case) and filed the Petition at issue in this appeal. It asked the court to compel Michael to produce (1) an inventory of Robert's estate from the date Robert appointed Michael as his attorney-in-fact; (2) an inventory of the estate at the time of Robert's death; and (3) "an accounting of [Michael's] administration of [Robert's] Estate as Agent under Power of Attorney" from the date of his appointment until Robert's death. The Petition also requested "supporting

documents including but not limited to real estate transactions, receipts, life insurance statements, investment statements, credit card statements, checks, deposits, [and] bank statements."

¶ 7 Michael did not respond, and on December 6, 2023, the district court granted the Petition. Michael immediately moved for permission to file a written objection, which the court granted. In his objection, Michael asserted that claim preclusion barred the Petition. The court subsequently denied the Petition. The order read as follows: "The Court does not authorize a Reply to the Response filed in this matter. The Court has considered the above-captioned petition and the Response. The Court, for reasons contained in [the] Response, VACATES it's [sic] Order of December 6, 2023 and DENIES the Petition. SO ORDERED."

¶ 8 Kathleen appealed.[3] On appeal, she asserts that the district court erred by accepting Michael's position that claim preclusion

---

[3] More than a month after the parties filed their briefs in this case, Kathleen — acting independently of counsel — filed a motion asking us to "examine issues not addressed previous to appeals case" and to "examine why [Judge] Collins dismissed my case." We do not address this motion because "arguments never presented to, considered by, or ruled upon by a district court may not be raised for the first time on appeal." *Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25.

4

barred the Petition. She also asserts that the district court's order denying the Petition constituted reversible error on several additional grounds. However, because we conclude that claim preclusion applies, we do not reach Kathleen's other contentions.[4] Both parties also request appellate attorney fees.

## II. Claim Preclusion Barred the Petition

### A. Standard of Review and Applicable Law

¶ 9 "We review de novo a judgment entered on the basis of claim preclusion." *Foster v. Plock*, 2017 CO 39, ¶ 10.

¶ 10 Under the doctrine of claim preclusion, parties cannot "relitigat[e] claims that were or that could have been litigated in a prior proceeding." *Gale v. City & Cnty. of Denver*, 2020 CO 17, ¶ 14. Claim preclusion bars subsequent litigation if four elements are met: "(1) the judgment in the prior proceeding was final; (2) the prior and current proceedings involved identical subject matter; (3) the prior and current proceedings involved identical claims for

---

[4] For the same reason, we also do not consider Michael's arguments that Kathleen lacked standing and a statutory right to file the Petition and to seek judicial review.

relief; and (4) the parties to the proceedings were identical or in privity with one another." *Id.* (citation omitted).

## B. Analysis

¶ 11 The parties agree that the 2022 case resulted in a final judgment. However, Kathleen argues that claim preclusion does not apply because the 2022 case, in which the district court denied her Amended Objection, did not involve identical subject matter, issues, and parties as the 2023 case. Therefore, we consider the second, third, and fourth elements of claim preclusion.

## 1. Identical Subject Matter

¶ 12 First, to determine whether both proceedings involved identical subject matter, courts consider "whether the same evidence would be used to prove the claims, even if the actions are different." *Foster*, ¶ 28. Here, Kathleen's Amended Objection in the 2022 case reflected her desire to keep the estate open so that she could investigate Michael's actions and management of Robert's estate as attorney-in-fact from the time when he began acting in that capacity through Robert's death. The district court denied that request. While the district court did not specifically address Kathleen's objection as it related to Michael's conduct as attorney-

6

in-fact, claim preclusion — unlike issue preclusion — does not require that an issue be actually litigated and decided. *See id.* at ¶ 13; *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020).

¶ 13    In the 2023 case — via the Petition — Kathleen asked the court to compel Michael to produce the same information. Indeed, the Amended Objection asked that the estate remain open so that Kathleen could obtain the same evidence she later requested in the Petition. *See Foster*, ¶ 28. Therefore, the cases raised claims involving identical subject matter that would have relied on the same evidence. Thus, the second element is satisfied. *See id.*

## 2.    Identical Claims

¶ 14    Next, the claims in two proceedings are identical when "the claim at issue in the second proceeding is the same claim that was (*or could have been*) brought in the first proceeding." *Id.* at ¶ 29 (emphasis added). Courts consider "the actual injury underlying the first proceeding" and whether the two claims "are tied by the same injury [because] they concern 'all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'" *Id.* (second alteration in original) (citation

7

omitted).  Whether claims arise out of the same transaction depends on whether "the underlying facts 'are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'"  *Id.* (citation omitted) (noting that claims also "arise out of the same transaction when they 'seek redress for essentially the same basic wrong, and rest on the same or a substantially similar factual basis'") (citation omitted).

¶ 15    Here, in the 2022 case, the Amended Objection was based in part on Michael's conduct and accounting as Robert's attorney-in-fact.  Just over two weeks after filing that objection, Kathleen sent Michael a demand letter requesting the same information that she alluded to seeking in the 2022 Amended Objection and later sought in the 2023 Petition.  In fact, the Petition cited the demand letter, noting its request that Michael "produce an inventory of [Robert's] Estate from the date [Michael] began acting as Attorney-in-fact, an inventory of [Robert's] Estate at the time of his death, and an accounting from the time [Michael] began acting as Attorney-in-fact through [Robert's] death."  The Petition, which requested the same

information, noted that Michael had failed to comply with the demand letter.

¶ 16 Therefore, the facts underlying the Petition's claims in the 2023 case concerned part of the same transaction or series of transactions as the claims raised in the 2022 case's Amended Objection. *See id.* Indeed, the underlying facts suggest a common motivation — Kathleen's desire to obtain information about Michael's conduct as Robert's attorney-in-fact. *See id.* The claims are also temporally related because they encompass information from the same time period — Michael's conduct as attorney-in-fact before Robert's death. *See id.* Finally, both claims seem to seek redress for the same alleged wrongs — that Michael allegedly wrongfully withheld information and breached his fiduciary duty while serving as Robert's attorney-in-fact. *See id.*

¶ 17 Kathleen argues that the two claims were not identical because the Amended Objection concerned Amanda's post-death conduct as personal representative, while the Petition concerned Michael's pre-death conduct as attorney-in-fact.[5] This argument

---

[5] For the same reason, Kathleen argues that the claims did not involve identical subject matter.

overlooks the portion of the Amended Objection asking the court to keep the estate open to allow Kathleen to request "an accounting and inventory of the assets and actions taken in [Michael's] capacity as attorney-in-fact for [Robert] from the date he began acting in said capacity through [Robert's] death." The Petition reflects a more direct request for the same information.

¶ 18    That the Amended Objection also involved claims about Amanda's conduct is not dispositive, nor is the fact that the court denied the Amended Objection on grounds unrelated to the claims about Michael's conduct. As discussed, the third element is satisfied when the claims concern "any part of the [same] transaction." *Foster*, ¶ 29 (citation omitted). And preclusion may apply even if the issue raised was not specifically litigated or decided. *Id.* at ¶ 13. Timing is also important here because claim preclusion bars claims that "*could have been* raised in a prior proceeding." *Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 2012 COA 22, ¶ 14 (emphasis added) (quoting *Argus Real Est., Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005)); *see also Gale*, ¶ 14.

¶ 19    Kathleen attempts to distinguish the two claims because the Amended Objection merely noted an intent to seek information from Michael; it did not ask the court to compel him to produce the information. But whether two claims are identical does not hinge "on the specific claim asserted or the name given to the claim." *Argus Real Est.*, 109 P.3d at 608-09. The distinction Kathleen draws elevates form over substance.

¶ 20    Moreover, Kathleen's argument overlooks the fact that the claims asserted in the Petition could have been litigated in the 2022 case. *See Loveland Essential Grp.*, ¶ 14. The demand letter gave Michael thirty days, or until September 13, 2023, to provide the requested information. § 15-14-714(8), C.R.S. 2024 (giving attorneys-in-fact thirty days to comply with such requests). The court issued the decree of final discharge on September 29, 2023. Therefore, Kathleen *could have* filed the Petition before there was a final order in the 2022 case. *See id.*; *Loveland Essential Grp.*, ¶ 14. Instead, she waited until November 13, 2023, to file the Petition. Additionally, as the district court noted in denying the Amended Objection, objections to the final settlement should have been made on or before the date of the final settlement hearing on June 30,

2023, and objections to Michael's handling of Robert's affairs *could have* been raised then. *See* C.R.P.P. 42(a) ("If any interested person desires to object to any accounting, the final settlement or distribution of an estate, . . . or any other matter, the interested person must file specific written objections at or before the hearing thereon . . . ."). As a party to the 2022 case, Kathleen had notice of the court's deadline. She also had the opportunity (but chose not) to appeal the district court's decision in the 2022 case. Kathleen cannot use the 2023 Petition to obtain relief she could have sought via an appeal.

¶ 21 In short, there is identity of claims between the claims raised in the 2022 case and those raised in the 2023 case. *See Foster*, ¶ 29. Therefore, the third element is satisfied.

### 3. Identical Parties

¶ 22 The fourth element requires that the parties to the two proceedings are either identical or in privity. *Gale*, ¶ 14. When "the subject matter [of litigation] is property, successors in interest to that property are in privity of estate with the parties to the litigation and are ordinarily bound by the judgment." *Argus Real Est.*, 109 P.3d at 608. Here, Michael and Kathleen, as Robert's devisees,

12

were both successors in interest to Robert's estate in the 2022 case. *See id.*; *see also* § 15-10-201(13), (27), C.R.S. 2024 (defining "[d]evisee" as "a person designated in a will to receive a devise" and "[i]nterested person[s]" as devisees and others with "a property right in or claim against" a decedent's estate); Black's Law Dictionary 1738 (12th ed. 2024) (defining "successor in interest" as "[s]omeone who follows another in ownership or control of property" and who "retains the same rights as the original owner, with no change in substance"). And both were parties to the 2023 case in which Kathleen petitioned the court to compel Michael to produce an inventory and accounting.

¶ 23    Kathleen argues that there was no privity of parties between the proceedings because Michael was a party to the 2022 case "as an heir of the Estate," while he was a party to the 2023 case "as attorney-in-fact for [Robert]." We are not persuaded by this artificial distinction. Both Kathleen and Robert were bound by the court's judgment in the 2022 case, which distributed the assets of Robert's estate. *See Argus Real Est.*, 109 P.3d at 608. The fourth element is met.

¶ 24    Because the elements of claim preclusion are satisfied, Kathleen could not bring the 2023 case to relitigate a claim that she could have brought in the 2022 case. *See Gale*, ¶ 14. We therefore affirm.

### III.    Attorney Fees

¶ 25    Finally, both Kathleen and Michael request appellate attorney fees. Kathleen, however, merely cites C.A.R. 28(a)(9), C.A.R. 39, and C.A.R. 39.1 in a single sentence without explaining the legal or factual basis for her request. Because we affirm the district court's order, *see* C.A.R. 39(a)(2), and Kathleen's request lacks the necessary supporting factual and legal basis for a fee award, we decline to award Kathleen appellate attorney fees. *See* C.A.R. 39.1 ("[T]he principal brief of the party claiming attorney fees must include a specific request, and explain the legal and factual basis, for an award of attorney fees. Mere citation to this rule or to a statute, without more, does not satisfy the legal basis requirement.").

¶ 26    Michael, in turn, requests appellate attorney fees on the ground that Kathleen's appeal "lacked substantial justification," thus justifying attorney fees under section 13-17-102(4), C.R.S.

2024.  *See* § 13-17-102(9)(a) (defining actions or defenses that "[l]acked substantial justification" as those that are "substantially frivolous, substantially groundless, or substantially vexatious"). When analyzing requests for appellate attorney fees under section 13-17-102, however, "divisions of this court have consistently applied a rule of awarding appellate attorney fees only if the appeal itself is frivolous." *Front Range Home Enhancements, Inc. v. Stowell*, 172 P.3d 973, 977 (Colo. App. 2007).  And in a probate case (as noted above, Kathleen's claims could have been litigated in the 2022 case) an appeal is only frivolous, and merits an award of appellate attorney fees, "in clear and unequivocal cases where no rational argument is presented" or the appellant acted in bad faith. *In re Estate of Shimizu*, 2016 COA 163, ¶ 34; *see also In re Estate of Fritzler*, 2017 COA 4, ¶¶ 25-28 (looking to section 15-10-605(1), C.R.S. 2024, of the Colorado Probate Code, which provides that a court may award fees and costs to a party responding to probate proceedings "brought, defended, or filed in bad faith," and holding that the more specific probate code provision displaces section 13-17-102(4), "thereby limiting the court's ability to award attorney fees absent some form of bad faith").

15

¶ 27    While Kathleen has not prevailed on appeal, we do not

conclude that her appeal is clearly and unequivocally without

rational argument or brought in bad faith.  Moreover, Michael

provides the legal basis for his claim for appellate attorney fees, but

his arguments do not provide a factual basis to support a

conclusion that Kathleen brought her appeal in bad faith.  *See*

C.A.R. 39.1.  Thus, we also decline to award Michael appellate

attorney fees.

## IV.    Disposition

¶ 28    The district court's order is affirmed.

JUDGE GOMEZ and JUDGE LUM concur.